## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Paris Da'Jon Allen, | Case No. 15-cv-1905 (WMW/SER) |
| Plaintiff, | **ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND AFFIRMING MAGISTRATE JUDGE'S ORDER** |
| v. | |
| Kathy Reid, Kelly Classen, Dr. Stephen Craane, and Nanette Larson, | |
| Defendants. | |

This matter is before the Court on the March 16, 2016 Report and Recommendation ("R&R") of United States Magistrate Judge Jeffrey J. Keyes, which recommends the denial of Plaintiff Paris Da'Jon Allen's motion for a temporary restraining order and preliminary injunction. (Dkt. 61.) Allen also appeals the March 16, 2016 Order of the magistrate judge, which denied Allen's third motion to appoint counsel. (Dkt. 60.) Also before the Court are Allen's fourth motion to appoint counsel and second motion for injunctive relief. (Dkt. 71, 73.) For the reasons addressed herein, the Court adopts the magistrate judge's R&R, affirms the magistrate judge's March 16, 2016 Order, and denies Allen's renewed motions for appointed counsel and injunctive relief.

## BACKGROUND

Allen, who is incarcerated at the Minnesota Correction Facility at Oak Park Heights ("MCF-OPH"), commenced this action on April 10, 2015. On July 1, 2015,

Allen filed an amended complaint ("Amended Complaint").  (Dkt. 7.)  Allen's Amended
Complaint asserts claims against Kathy Reid, the Health Services Administrator at
MCF-OPH; Nanette Larson, the Health Services Director for the Minnesota Department
of Corrections ("DOC"); and Dr. Stephen Craane, an employee of Centurion of
Minnesota, LLC.[1]  The Amended Complaint alleges that Defendants violated Allen's
rights secured by the Eighth Amendment to the United States Constitution when they
deprived him of supplemental food to compensate for his egg intolerance and failed to
treat injuries to Allen's back and finger.   Allen has filed a series of motions and
objections in this matter that are now before the Court and briefly summarized below.

## I.      Allen's First Motion for Injunctive Relief

On February 8, 2016, Allen filed his first motion for a temporary restraining order
and preliminary injunction ("First TRO Motion").  (Dkt. 34.)  Allen sought injunctive
relief "to ensure that [Allen] receive[s] proper medical care."  He argued to the magistrate
judge that he has been denied care for a "serious medical need" in violation of his rights
under the Eighth Amendment to the United States Constitution.  This harm is irreparable,
he asserted, both because it is a continuing deprivation of his constitutional rights and
because his back injury and the alleged nutritional deprivation will cause him to suffer
"severe pain."  Allen alleged that he reported to prison personnel in August 2015 that he
was experiencing back pain arising from chronic back problems, but the prison medical
staff did not attend to him for approximately two weeks and then denied him pain

---

[1]      Allen's Amended Complaint also asserts claims against Kelly Classen and an
unspecified "Dietician."   But the record reflects that neither has been served with a
summons and complaint or made an appearance in this matter.

medication.  Allen contended that, because Defendants have deprived him of medical care and proper nutrition, he is in pain, he is emaciated, his clothing does not fit, and his hair is falling out.  Allen argued that granting his motion for a temporary restraining order and preliminary injunction will serve the public's interest by ensuring that prison officials obey the law and the United States Constitution.

In opposition to Allen's First TRO Motion, Reid and Larson argued that Allen failed to meet his burden with regard to the factors articulated in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (outlining four factors that courts consider when determining whether to grant a temporary restraining order or preliminary injunction).[2]  In particular, Reid and Larson contended that Allen's allegations relate to past care and treatment decisions and that Allen has neither asserted nor provided evidence of any ongoing issues with his care.  Reid and Larson also submitted an affidavit and exhibits, including recent portions of Allen's medical records.

In reply, Allen asserted that the exhibits filed by Reid and Larson omitted portions of his medical records and that Reid made false statements in her affidavit by claiming that Allen has refused physical therapy.  Allen's reply also supplied greater specificity as to his requested relief—namely, he sought an order directing Defendants to (1) perform an MRI, (2) begin "appropriate medical and physical therapy and continue therapy" until his release, (3) provide a replacement for the eggs served to him for breakfast, (4) treat the callous on his finger, and (5) provide Allen double food portions until his condition

---

[2]     Dr. Craane separately opposed Allen's First TRO Motion, largely echoing and incorporating by reference the arguments made by Reid and Larson.

improves.  The rest of his reply largely repeated the arguments and allegations he initially advanced in support of his First TRO Motion.

Magistrate Judge Keyes's R&R recommends denying Allen's First TRO Motion. In support of this recommendation, the magistrate judge concludes that most of the relief Allen seeks is not properly awarded through an injunction because the relief sought is not related to the allegations and relief sought in his Amended Complaint.  To the extent that Allen seeks "proper medical care" with respect to his egg intolerance, injured back, and injured finger, the magistrate judge concludes that Allen has not satisfied his burden of proving any of the *Dataphase* factors.  Allen filed timely objections to the R&R, the merits of which the Court addresses below.

## II.    Allen's Third Motion to Appoint Counsel

On March 1, 2016, Allen filed his third motion to appoint counsel.  (Dkt. 53.)  In support of that motion, Allen asserted to the magistrate judge that he is unable to afford counsel, the issues involved in this case are complex, he has been denied adequate access to his medical records and the law library, and Defendants and their counsel take advantage of Allen's lack of legal knowledge.  Allen had previously filed two motions to appoint counsel—on December 18, 2015 and on January 14, 2016, respectively—which the magistrate judge denied in a February 16 order.  Allen did not appeal that order.

Magistrate Judge Keyes denied Allen's third motion to appoint counsel, and incorporated by reference the February 16 order denying Allen's two earlier motions to appoint counsel.  In the February 16 order, the magistrate judge observed that pro se litigants do not have a constitutional or statutory right to counsel in civil cases.  Rather,

the appointment of counsel is within the district court's discretion.   After reviewing the relevant factors, the magistrate judge determined that neither the facts nor the legal issues in this case are so complex as to warrant the appointment of counsel.   The magistrate judge observed that, although Allen's lack of legal knowledge might present some disadvantages, Allen articulates his claims, argues in support of them, and communicates effectively with the Court.   In addition to incorporating this reasoning by reference, the magistrate judge concluded that Allen's difficulty accessing his medical records does not prevent Allen from fairly presenting his case, "[n]or does the fact that Allen has not yet prevailed on any of the motions he has filed mean that he lacks the ability to articulate his claims and argue his positions."   Allen filed timely objections to the magistrate judge's March 16, 2016 Order denying Allen's third motion to appoint counsel, and the Court addresses the merits of these objections below.

### III.   Allen's Second Motion for Injunctive Relief and Fourth Motion to Appoint Counsel

On April 1, 2016, before Allen's objections to the magistrate judge's R&R and March 16, 2016 Order came under advisement with this Court, Allen filed a fourth motion to appoint counsel and a second motion for a temporary restraining order and preliminary injunction ("Second TRO Motion").  (Dkt. 71, 73.)  In these motions, Allen reiterates the facts and arguments that he advanced in support of his First TRO Motion and his third motion to appoint counsel.   He also alleges that the Court is biased against him, as demonstrated by the Court's denial of his previous motions.   The Court addresses the merits of these new motions below.

## ANALYSIS

### I.    Allen's First TRO Motion

A party "may file and serve specific written objections to a magistrate judge's proposed findings and recommendations." LR 72.2(b)(1). The district court reviews de novo those portions of the R&R to which an objection is made, and the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (2009); *accord* Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3). Ordinarily, the district judge relies on the record of proceedings before the magistrate judge. LR 72.2(b)(3).

Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of either a temporary restraining order ("TRO") or a preliminary injunction.[3] Injunctive relief is an extraordinary remedy, and the burden rests with the moving party to establish that this relief is warranted. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). A district court considers the following four factors when determining whether to issue a TRO: (1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest. *See Dataphase*, 640 F.2d at 113.

---

[3]     The same legal standard applies to both a motion for a TRO and a motion for a preliminary injunction. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989); *Jackson v. Nat'l Football League*, 802 F. Supp. 226, 229 (D. Minn. 1992).

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the court has had an opportunity to rule on the merits of the lawsuit. *See Dataphase*, 640 F.2d at 113 & n.5. "Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). A moving party is not entitled to a preliminary injunction based on assertions that are different from the conduct asserted in the complaint, even if the new assertions might support additional claims against the same defendants. *Id.* (affirming denial of preliminary injunction when incarcerated plaintiff's complaint alleged inadequate medical treatment in violation of the Eighth Amendment, but his motion for a preliminary injunction alleged other retaliatory conduct by prison officials). Here, Allen's Amended Complaint alleges that Defendants failed to provide alternatives to the eggs served in prison and denied Allen medical care for injuries to his back and finger. But Allen's First TRO Motion also includes several new allegations that are unrelated to the denial of food alternatives and medical care and that arose after he filed his Amended Complaint.[4] None of these new allegations provides a proper basis for injunctive relief. *Id.*

---

[4]     Allen's submissions allege that prison personnel have falsified reports and disciplined him in retaliation for filing this lawsuit. Specifically, Allen asserts that prison personnel have (1) denied him access to his medical records and failed to provide him photocopies within one and one-half weeks of his request, (2) failed to treat as privileged a letter that Allen sent to opposing counsel, (3) confiscated envelopes that Allen uses to write to the Court, (4) failed to properly process a grievance that Allen filed, and (5) forged and falsified documents. Allen's reply in support of his First TRO Motion also

Thus, to the extent that Allen seeks injunctive relief for alleged mistreatment and retaliation that are unrelated to the claims in his Amended Complaint, he is not entitled to such relief.

### A. The *Dataphase* Factors

For those aspects of Allen's First TRO Motion that pertain to the allegations in Allen's Amended Complaint, the Court applies the four *Dataphase* factors.

### 1. Irreparable Harm

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted). Bare allegations of what is likely to occur are insufficient to establish irreparable injury. *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). Rather, the party alleging irreparable harm must offer proof that the harm has both occurred in the past and is likely to occur again, or proof that the harm is certain to occur in the near future. *Id.*

Allen alleges that the irreparable harm he will suffer absent an injunction is severe pain, malnourishment, and the denial of medical care and accommodations for his back injury, finger injury, and egg intolerance. But Allen has not provided any evidence that he is in imminent danger of severe pain, malnourishment, or insufficient medical care. To the contrary, the documents submitted by both Allen and Defendants demonstrate that

---

alleges racial discrimination and violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*

prison medical personnel have provided Allen medical care more than two dozen times in the past year, including x-rays, blood tests, physical therapy, and numerous other medical tests and evaluations.  When Allen has sporadically reported back pain, prison medical personnel have provided him multiple forms of pain medication.  As recently as February 5, 2016, Allen reported to prison medical personnel that his pain level was zero out of ten.  Prison medical personnel treated Allen's injured finger with a finger cushion on February 11, 2016, to alleviate pain caused by excessive writing.  And despite Allen's alleged weight loss, there is no evidence of malnutrition in the record.  To the contrary, in January 2016 Allen gained seven pounds in less than one month, and the prison medical personnel concluded that Allen did not need any supplemental food.

Allen has not demonstrated that he is suffering harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706 (internal quotation marks omitted).  Accordingly, Allen fails to demonstrate a threat of irreparable harm.

### 2.  Balance of Harms

The next *Dataphase* factor compares the moving party's alleged harm to the injury that an injunction would inflict on other parties.  640 F.2d at 113.  As addressed above, the severity and imminence of Allen's alleged harm are not supported by the record.  Moreover, Allen has not demonstrated that the harm he may suffer absent an injunction outweighs the injury that an injunction would inflict on the Defendants.  Reid and Larson have asserted that an injunction may interfere with the effective administration of DOC's medical care policies.  In support of their contention, Reid and Larson submitted copies

of these policies, which describe the medical services available to incarcerated individuals and the procedures governing the provision of those services.

Allen has not established that the balance of harms favors granting injunctive relief.

### 3. Likelihood of Success on the Merits

The likelihood of success on the merits is the most important *Dataphase* factor. *Roudachevski*, 648 F.3d at 706. This factor requires the moving party to demonstrate a "fair chance" of success on the merits. *Planned Parenthood Minn., N.D., S.D., v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). This standard does not require a likelihood of prevailing that is greater than 50 percent. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003). The speculative nature of this inquiry cautions against a mathematical application of the standard. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). When performing this analysis, the court is not deciding whether the moving party ultimately will prevail. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991); *O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984).

Allen's claim is that prison officials have been deliberately indifferent to his medical needs, in violation of his rights under the Eighth Amendment to the United States Constitution. This claim includes both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Allen must demonstrate that (1) he suffered objectively serious medical needs and (2) prison officials knew of those needs but deliberately disregarded them. *Id.* "Because society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' " *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   Therefore, a failure to treat a medical condition is not punishment within the meaning of the Eighth Amendment "unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).   Absent these circumstances, the Eighth Amendment does not provide a prisoner the right to receive a particular medical treatment, and prison physicians may exercise their independent medical judgment when determining what course of treatment, if any, is medically appropriate.   *Dulany*, 132 F.3d at 1239.   "[C]laims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude." *Massey v. Hutto*, 545 F.2d 45, 46 (8th Cir. 1976) (per curiam).

Allen emphasizes that prison officials have intentionally ignored a signed authorization that would allow him to receive supplemental food in lieu of eggs.   This argument, however, is not supported by the record.   The signed dietary authorization was prepared at the Minnesota Correctional Facility in Stillwater and expired in March 2015. After Allen was transferred to MCF-OPH in September 2014, Larson advised Allen that "[e]ach facility within our system has the right and responsibility to evaluate claims of food allergies and to determine how best to address individual cases."   Larson concluded that Allen's egg intolerance does not warrant supplemental food because the food offerings at DOC contain "additional calories and nutrition to allow for some self-

selection without falling below nutritional standards over time."  Larson also advised Allen that he could present his case for a dietary accommodation during a visit with the MCF-OPH physician without incurring a co-payment for the medical visit.  Contrary to Allen's assertions, the record does not support Allen's contention that Defendants have deliberately disregarded a serious nutrition-related medical need.

The record also establishes that prison medical personnel have provided Allen regular and frequent medical attention and treatment for the remainder of the medical concerns that Allen raises here.  Allen's submissions suggest that he is dissatisfied with the *type* and *quality* of treatment he has received.   He has demanded more pain medication, more food, an MRI, and more immediate attention from medical personnel. But no evidence that prison medical personnel have deliberately disregarded any of Allen's serious medical needs exists in the record.  Rather, the evidence establishes that prison medical personnel repeatedly have evaluated Allen's reports of pain and weight loss, conducted numerous medical tests, and developed treatment plans for him. Notwithstanding Allen's disagreements as to the proper medical treatment he should receive, the record reflects that prison medical personnel exercised their independent medical judgment with respect to Allen's medical needs.  *See Massey*, 545 F.2d at 46.

Because Allen's likelihood of success on the merits is demonstrably meager on the existing record, this *Dataphase* factor weighs against granting injunctive relief.

### 4.  Public Interest

In the prison setting, a request for a preliminary injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing

with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks omitted). In addition, the public interest determination depends on the likelihood of success on the merits "because it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). Allen correctly asserts that there is a public interest in ensuring that prisons treat inmates fairly and in accordance with the law. There also is a public interest in the effective management of prisons. And courts exercise restraint with respect to matters of prison administration. *See Goff*, 60 F.3d at 520. Moreover, as addressed above, Allen has not demonstrated that his constitutional claims are likely to succeed on the merits.

The public interest factor does not support granting Allen injunctive relief.

## B. Allen's Objections to the Magistrate Judge's R&R

Allen raises a number of objections that are not tethered to the *Dataphase* analysis. Specifically, Allen argues that (1) courts cannot deny a temporary restraining order or preliminary injunction until a qualified physician is appointed, (2) DOC has a history of improper conduct, (3) he would prefer to be treated by an African American doctor, (4) Reid and others are obstructing his access to the courts, (5) the denial of his motions is evidence of judicial bias, and (6) the Court has not permitted him to be represented by counsel. To the extent that Allen seeks injunctive relief unrelated to the claims made in his Amended Complaint, he is not entitled to such relief. *Devose*, 42 F.3d at 471. In addition, Allen offers no factual or legal support for these objections. And these objections do not alter the merits of this Court's conclusion with respect to any

*Dataphase* factor.  As such, these objections do not warrant granting Allen injunctive relief.

Allen also objects on the ground that he is unable to access his medical records. But, again, Allen is not entitled to relief unrelated to the claims made in his Amended Complaint.  *Devose*, 42 F.3d at 471.  Moreover, relevant portions of Allen's medical files are included in the record, having been submitted by Allen and by Defendants.  Thus, these medical files are available to Allen.

Allen also alleges that Reid filed false evidence in opposition to Allen's First TRO Motion.  Allen provides no evidence to support this allegation, however.  And nothing in the record raises any doubt about the veracity of Defendants' evidence.  Injunctive relief is not warranted on this ground.

Finally, Allen argues that Defendants have demonstrated deliberate indifference to his medical needs because they have disregarded Larson's directive to modify Allen's meals.  This argument fails in light of Larson's determination that Allen's egg intolerance does not warrant providing supplemental food to Allen because DOC's food offerings include additional calories and nutrition that permit inmates to make food choices "without falling below nutritional standards over time."  Allen's medical records also reflect that Allen does not need any supplemental food.  Accordingly, this objection fails as a basis for granting Allen injunctive relief.

The magistrate judge's R&R correctly concludes that Allen is not entitled to injunctive relief, and Allen's objections do not alter the merits of that conclusion.  For

these reasons, the Court overrules Allen's objections and adopts the magistrate judge's R&R.

## II.    Allen's Second TRO Motion

Before the magistrate judge issued his R&R, Allen filed a Second TRO Motion. (Dkt. 73.)  In support of his Second TRO Motion, Allen analyzes the *Dataphase* factors. Addressing the irreparable harm factor, Allen asserts that Defendants' intentional interference with his medical treatment is an ongoing violation of the Eighth Amendment that causes him to suffer continuing and irreparable severe pain.[5]  Addressing the balance of harms, Allen argues that the high risk that he will suffer unnecessary pain outweighs the harm that Defendants would suffer if ordered to have Allen examined by a physician suitable to him.  Allen contends that his claims of due process and Eighth Amendment violations will succeed on the merits for two reasons: first, Larson was grossly negligent in supervising subordinates and second, to retaliate against Allen for this lawsuit, Reid falsely asserted in her affidavit that Allen refused physical therapy.  Finally, Allen reiterates the public's interest in prison officials obeying the law.

Allen's Second TRO Motion largely repeats the arguments and evidence presented in support of his First TRO Motion, which the Court has rejected in Section I of this Order.  Allen's Second TRO Motion fails to satisfy the irreparable harm, likelihood of success on the merits, and public interest factors for the same reasons that his First TRO

---

[5]    In addition to the Eighth Amendment, Allen also cites 42 U.S.C § 12132, which pertains to discrimination by a public entity based on an individual's disability.  Because this claimed statutory violation is outside the scope of Allen's Amended Complaint, it is not a proper basis for injunctive relief.  *See Devose*, 42 F.3d at 471.

Motion fails to do so.  The only new argument that Allen advances in his Second TRO Motion pertains to the balance-of-harms factor of the *Dataphase* analysis.  But even if the Court accepts Allen's argument on this factor, Allen's motion fails because Allen has not satisfied his burden under the remaining *Dataphase* factors.  *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) ("Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted.").  Therefore, Allen's Second TRO Motion is denied.

### III.   Allen's Third Motion to Appoint Counsel

In a March 16, 2016 Order, the magistrate judge denied Allen's third motion to appoint counsel.  (Dkt. 60.)  Allen filed timely objections to the March 16, 2016 Order.  (Dkt. 66.)  In his objections, Allen contends that an attorney contacted the Court and volunteered to represent Allen at no cost, but that the Court refused to permit the volunteer attorney to represent Allen.  Allen also argues that Defendants, their counsel, and the Court are biased against him, and appointed counsel will "expose the truth" about Defendants' conduct and other disputed issues.

A district court must consider timely objections to a magistrate judge's ruling on a nondispositive pretrial matter and shall modify or set aside any part of the magistrate judge's ruling that is either clearly erroneous or contrary to law.   28 U.S.C. § 636(b)(1)(A) (2009); Fed. R. Civ. P. 72(a); LR 72.2(a)(3); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007).  The district court may review any matter decided by the magistrate judge to which no party objected.  LR 72.2(a)(3).  A magistrate judge's

ruling is clearly erroneous when, although there is evidence to support the ruling, after examining the entire record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted).   A magistrate judge's ruling is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted).  When reviewing an appeal of a magistrate judge's ruling on a nondispositive issue, the district court's standard of review is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008).

There is neither a constitutional right nor a statutory right to appointed counsel in a civil case. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  But in its discretion, a court may appoint counsel to represent an indigent prisoner in a civil case. *Id.*  When considering such a motion, courts should "determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984). Among the relevant criteria a court considers are "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794.

Here, after considering each of these factors, the magistrate judge denied Allen's motion.  The magistrate judge found that Allen has demonstrated the ability to articulate his claims and argue his positions, Allen is able to communicate effectively with the

Court, and neither the facts nor the legal issues in this case are so complex to warrant the appointment of counsel.  The magistrate judge also found that Allen's difficulty in obtaining access to his medical records does not establish that Allen cannot fairly present his case, nor is the magistrate judge's denial of Allen's motions evidence that Allen is unable to articulate and argue in support of his claims.  The record supports each of these findings.  Allen is capable of representing himself.  He has successfully applied to proceed *in forma pauperis*, amended and served his complaint, filed numerous motions, legal memoranda, declarations, and exhibits, and objected to decisions of the magistrate judge.  Allen's written submissions include detailed arguments with citations to case law, federal and state statutes, procedural rules, and constitutional provisions.

Allen concedes that pro se litigants do not have a constitutional or statutory right to counsel in a civil case.  But Allen asserts that he has a right to counsel when a volunteer attorney contacts the Court to "volunteer her service to represent a pro se plaintiff at no cost."  Allen contends that an attorney from the Pro Se Project contacted the Court and volunteered to represent Allen at no cost.  But, according to Allen, the Court refused to allow the volunteer attorney to represent him.  These claims are not supported by any evidence in the record.

Allen also contends that Defendants have withheld his medical records, violated procedural rules, and made false statements to the Court.  If an attorney is appointed to represent him, Allen asserts, his attorney will "expose the truth" about these issues, witness credibility, and other disputed facts.  But Allen has demonstrated that he is capable of advocating for himself on each of these issues.  He has filed a motion for

sanctions against Defendants and has zealously advanced arguments regarding Defendants' alleged false statements. That Allen's arguments have not been successful does not demonstrate that he is incapable of advocating for himself.

Allen also argues that Defendants, their counsel, and the Court are biased against him. He asserts that, because of gender and racial bias, the Court has criticized Allen's lack of legal knowledge, complimented defense counsel, and permitted Defendants to violate court rules. But these allegations lack any evidentiary support.

Based on the record, the magistrate judge's March 16, 2016 Order denying Allen's third motion to appoint counsel is neither clearly erroneous nor contrary to law. Each of Allen's objections lacks merit. Accordingly, the magistrate judge's March 16, 2016 Order is affirmed.

### IV.    Allen's Fourth Motion to Appoint Counsel

Allen filed a fourth motion to appoint counsel before Allen's objections to the magistrate judge's March 16, 2016 Order came under advisement with this Court. (Dkt. 71.) In addition to repeating his earlier arguments, Allen asserts in this motion that the Pro Se Project Coordinator at the Federal Bar Association has volunteered to represent Allen, but that the Court has refused to allow the Coordinator to do so. As addressed in Section III of this Order, the record contains no evidence in support of Allen's claims. Accordingly, Allen's fourth motion to appoint counsel is denied.

**ORDER**

Based on the foregoing analysis, the Report and Recommendation of the magistrate judge, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Magistrate Judge Keyes's March 16, 2016 Report and Recommendation, (Dkt. 61), is **ADOPTED**, and Allen's first motion for a temporary restraining order and preliminary injunction, (Dkt. 34), is **DENIED**;

2.      Allen's second motion for a temporary restraining order and preliminary injunction, (Dkt. 73), is **DENIED**;

3.      Magistrate Judge Keyes's March 16, 2016 Order denying Allen's third motion to appoint counsel, (Dkt. 60), is **AFFIRMED**; and

4.      Allen's fourth motion to appoint counsel, (Dkt. 71), is **DENIED**.


Dated:  June 3, 2016                                    s/Wilhelmina M. Wright
                                                       Wilhelmina M. Wright
                                                       United States District Judge