# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Paris Da'Jon Allen,

<table>
<tr><td>Plaintiff,</td><td>**Case No. 15-cv-1905 (WMW/SER)**</td></tr>
</table>

v.

Kathy Reid, Kelly Classen, Dr. Stephen Craane, Dietician, and Nan Larson,

**REPORT AND RECOMMENDATION AND ORDER**

Defendants.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on the following motions: Plaintiff Paris Da'Jon Allen's ("Allen") First Motion for Continuance; Second Motion for Continuance; Motion for Sanctions; Motion for Declaratory Judgment; Motion to Appoint Counsel; Defendants Kathy Reid ("Reid") and Nan Larson's ("Larson") Motion for a Protective Order; Defendant Stephen Craane, M.D. ("Dr. Craane")'s Motion for Protective Order;[1] Allen's Motions for Preliminary Injunction; Reid and Larson's Motion to Strike; Dr. Craane's Motion to Compel; Reid and Larson's Motion to Seal, and Allen's Motion re: Harassment.[2] For the reasons

---

[1]    Although Allen identifies this defendant as "Dr. Stephen Crann," the Court will use the spelling Dr. Craane uses. *See* (Answer of Stephen Craane, M.D., to Pl.'s Compl.) [Doc. No. 15 at 1] (stating that "Defendant Stephen Craane, M.D. (incorrectly identified as 'Dr. Stephen Crann'), for his Answer to Plaintiff's Complaint, states as follows: . . . .").

[2]    The formal titles of these motions and corresponding document numbers are: Motion Continuance Rule 6.1 Fed. R. Civ. P. [Doc. No. 84] ("First Motion for Continuance"); Motion Continuance Rule 6.1 Fed. R. Civ. P. [Doc. No. 104] ("Second Motion for Continuance"); Memorandum of Law Sanction Rule 11(c)(1)(B) [Doc. No. 107] ("Motion for Sanctions"); Rule 57 Fed. R. Civ. P. Declaratory Judgment Motion [Doc. No. 109] ("Motion for Declaratory Judgment"); Motion for 28 U.S.C. 1915(e)(1) Appointment of Counsel [Doc. No. 115] ("Motion to Appoint Counsel"); Defendants Reid and Larson's Motion for a Protective Order [Doc. No. 120] ("Motion for a Protective Order"); Dr. Craane's Joinder in Motion for a Protective Order [Doc. No. 125] ("Dr. Craane's Motion for Protective Order"); Order to Show Cause for An Preliminary Injunction [Doc. No. 135] and Order to Show Cause for An Preliminary Injunction [Doc. No. 136] (collectively, "Motions for Preliminary Injunction"); Defendants Reid and Larson's Motion to Strike [Doc. No. 142]; Dr. Craane's Motion to Compel Plaintiff's Medical

stated below, the Court recommends denying Allen's Motion for Declaratory Judgment and Motions for Preliminary Injunction. In addition, the Court denies Allen's Motions for Continuance, Motion for Sanctions, Motion to Appoint Counsel, Reid and Larson's Motion to Strike, and Allen's Motion re: Harassment. The Court grants in part an denies in part Reid, Larson, and Dr. Craane's Motions for Protective Order, and grants Dr. Craane's Motion to Compel, and Reid and Larson's Motion to Seal. Finally, the Court orders Reid and Larson to serve Allen with his medical records, and amends the scheduling order as described later in this Report and Recommendation and Order.

## I.    BACKGROUND

Allen is a prisoner who was confined at Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH") when he filed his complaint.[3] (Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983, "Compl.") [Doc. No. 1 at 5]. He seeks relief under 42 U.S.C. § 1983, asserting that Defendants, who were employees or contractors at MCF-OPH, violated his Eighth Amendment rights by failing to provide suitable alternative foods instead of eggs and by failing to treat his back and finger injuries. *See* (Am. Compl.) [Doc. No. 7].

Allen initiated this lawsuit on April 10, 2015, and filed his Amended Complaint three months later. (Compl.); (Am. Compl.). Allen previously filed several motions, and on March 15, 2016, the Honorable Jeffrey J. Keyes, United States Magistrate Judge, issued rulings on Allen's

---

Records [Doc. No. 147] ("Motion to Compel"); Defendants Reid and Larson's Motion to Seal [Doc. No. 149]; Allen's Harassing Motions Bad Motive [Doc. No. 158] ("Motion re: Harassment").

Allen also filed two documents styled as motions for objections under Rule 46. *See* [Doc. Nos. 129, 139]. Some of the relief sought is addressed in this Report and Recommendation and Order. To the extent they require a ruling on an objection to a Court order, however, the Court defers to the Honorable Wilhelmina M. Wright. *See* Fed. R. Civ. P. 46; LR 72.2.

[3]    Allen is now confined at Minnesota Correctional Facility – Rush City. (Notice of Retaliatory Transfer of Address) [Doc. No. 155].

pending motions. *See* (Order & Mem. Dated Mar. 16, 2016, "Mar. Order") [Doc. No. 60]; (R&R Dated Mar. 16, 2016, "Mar. R&R") [Doc. No. 61]. Because some of the motions currently before the Court relate to Judge Keyes's rulings, those rulings will be described briefly.

In his March Order, Judge Keyes denied Allen's Motion for Sanctions and Motion to Appoint Counsel. (Mar. Order at 1). Judge Keyes found that Allen's previous attempts to get his medical records were filed through the prison grievance system, rather than through the discovery process. (*Id.* at 3). Because Allen had not attempted to seek discovery, because the Court had not ordered Defendants to produce any specific discovery, and because Allen did not show that he attempted in good faith to resolve this issue without further court action, Judge Keyes found Rule 37 sanctions unwarranted. (*Id.*). Judge Keyes also denied Allen's Motion to Appoint Counsel for the same reasons previous motions to appoint counsel were denied— because "neither the facts nor the legal issues involved in this [case] are so complex as to warrant the appointment of counsel" and because "Plaintiff has the threshold ability to articulate his claims and to argue his positions, and he is able to communicate effectively with the Court." (Order on Pl.'s Mots. to Appoint Counsel) [Doc. No. 40 at 2]; (Mar. Order at 4). Judge Keyes further concluded that "Allen's troubles getting access to his medical records does not mean that Allen cannot fairly present his case" and that "the fact that Allen has not yet prevailed on any of the motions he has filed" does not "mean that he lacks the ability to articulate his claims and argue his positions." (Mar. Order at 4).

Allen also sought "a [temporary restraining order ("TRO")] and preliminary injunction to ensure that he receive[s] proper medical care." (Mar. R&R at 2) (second alteration in original) (internal quotation marks omitted). Reid and Larson received the Court's permission to file an exhibit under seal because it contained Allen's medical records, which are classified as private

data under Minnesota Statute section 13.85.[4] (Defs. Reid & Larson's Mot. to Seal) [Doc. No. 37]; (Order Dated Feb. 16, 2016) [Doc. No. 41]. Reid filed an affidavit in support of her and Larson's opposition to Allen's motion. (Aff. of Kathryn Reid, "Reid Aff.") [Doc. No. 45]. Pursuant to the Court's Order, the Reid Affidavit included Exhibit C, filed under seal and containing "true and accurate copies of Allen's practitioner and nursing progress notes from November 2015 to the present." (*Id.* ¶ 4); *see also* (Ex. C, Attached to Reid Aff.) [Doc. No. 45-2]. Judge Keyes recommended that Allen's Motion for TRO and Preliminary Injunction be denied to the extent it sought relief unrelated to his Amended Complaint. (Mar. R&R at 4–5). Judge Keyes also recommended that the motion be denied to the extent it was related to the claims in his Amended Complaint regarding his medical care. *See* (*id.* at 5–7). In particular, using the *Dataphase* factors, Judge Keyes concluded that Allen did not establish he was likely to suffer irreparable harm in the absence of a preliminary injunction because he "failed to specify the medical condition for which he needs the care."[5] (*Id.* at 5–6). Judge Keyes noted that although Allen alleged facts about medical care, it was focused on past medical care—from May 2015 to November 2015—and therefore, it was not clear "whether [Allen] has any current complaint about his medical care." (*Id.* at 6). Judge Keyes concluded that Allen's failure to show significant harm if his motion is denied demonstrated that Allen "has also not met his burden of

---

[4]           Unless the data are summary data or arrest data, or a statute specifically provides a different classification, corrections and detention data on individuals are classified as private pursuant to section 13.02, subdivision 12, to the extent that the release of the data would either (a) disclose medical, psychological, or financial information, or personal information not related to their lawful confinement or detainment or (b) endanger an individual's life.

Minn. Stat. § 13.85, subdiv. 2

[5]    The *Dataphase* factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

establishing that any harm he may suffer if no TRO or injunction is entered outweighs the harm that might occur if his motion for a TRO and preliminary injunction is granted." (*Id.*). Next, Judge Keyes found that Allen did "not provide[] evidence sufficient to establish that he is likely to succeed on the merits of his claims." (*Id.*). In reaching this conclusion, Judge Keyes reviewed the medical records Reid provided and found that they "do not show that there has been any failure to provide him with medical care and treatment." (*Id.*). Finally, Judge Keyes concluded that Allen did not establish "that the public interest would best be served" by the Court granting his motion. (*Id.*). On June 3, 2016, Judge Wright adopted the March R&R and affirmed the March Order over Allen's objections. *See* (Order Adopting Mag. J.'s R&R & Aff'g Mag. J.'s Order, "June Order") [Doc. No. 79].

## II.     DISCUSSION

In the motions currently pending before the Court, Allen repeats several allegations regarding the conduct of Reid and Larson's former attorney, Margaret Jacot ("Jacot"),[6] and the medical records Reid filed under seal as part of her opposition to Allen's Motion for TRO and Preliminary Injunction.[7] Many of these allegations have already been addressed by the Court. Given the repetitive nature of these allegations, the Court describes them here and analyzes them broadly. The Court then addresses the parties' various motions.

### A.     Repeated Factual Allegations

#### 1.     Allegations[8]

Allen's current motions demonstrate that he believes that Jacot did not participate in

---

[6]     Timothy S. Christensen recently replaced Jacot as Reid and Larson's counsel. (Notice of Substitution of Counsel) [Doc. No. 157].

[7]     These allegations are repeated with little connection to the relief each motion seeks.

[8]     In light of the quantity of Allen's filings, the Court uses footnotes in this section to improve readability.

discovery as contemplated by the Federal Rules of Civil Procedure.[9] In particular, Allen believes Jacot tampered with his medical records or destroyed records, and that Reid's affidavit is "false."[10] Allen argues that he has been denied access to his medical records, and this denial constitutes denial of his due process rights.[11] Allen's claims are based on the fact that Exhibit C, which was attached to the Reid Affidavit and filed under seal, contained only part of his medical record.[12] Allen requests that Jacot be enjoined from contacting him.[13] In one motion, Allen seeks an order to search Jacot's home and car for what he believes are his missing medical records.[14] Allen argues that neither Jacot nor Dr. Craane's attorneys were authorized to have access to his medical records.[15] Allen argues that Judge Keyes was biased against him, and that an attorney contacted Judge Keyes on Allen's behalf.[16]

Allen also attempts to add claims to this case through his motions. He asserts that his equal protection rights have been violated and that Reid is interfering with his unspecified disability.[17] Allen also refers to the violation of his due process rights, for which he claims Jacot

---

[9]     (First Mot. for Continuance at 1); (Second Mot. for Continuance at 17); *see also* (Mem. of Law in Supp. of Second Mot. for Continuance) [Doc. No. 105 at 3–4]; (Mot. for Declaratory J. at 3–4).

[10]    (First Mot. for Continuance at 1–2); (Second Mot. for Continuance at 17); *see also* (Mem. of Law in Supp. of Second Mot. for Continuance at 3–4, 6–7, 8); (Mot. to Appoint Counsel at 4–5).

[11]    (First Mot. for Continuance at 2).

[12]    (First Mot. for Continuance at 2); *see also* (Mot. for Sanctions at 2) (arguing that Jacot filed his medical records "with corrupt motive [and] bad faith to taint the record medical relevance and materiality was removed and destroyed"); (Mot. for Declaratory J. at 6) (disputing that only part of Allen's medical records are relevant).

[13]    (First Mot. for Continuance at 4–5); (Mem. of Law in Supp. of First Mot. for Continuance) [Doc. No. 85 at 5].

[14]    (Mem. of Law in Supp. of Mot. for Declaratory J.) [Doc. No. 110 at 7].

[15]    (Mem. of Law in Supp. of Mot. to Appoint Counsel) [Doc. No. 116 at 2].

[16]    (First Mot. for Continuance at 3).

[17]    (Mot. for Declaratory J. at 1–2); (Mot. to Appoint Counsel at 2, 3).

is responsible.[18]

## 2.    Analysis

### a.    Allen's Medical Records

The Court first addresses Allen's contentions regarding his medical records, which are of central concern to Allen. Reid filed part of Allen's medical records with the Court. *See* (Reid Aff. ¶ 4). There is no Court order, nor any other reason that any defendant or Jacot was required, as Allen asserts, to file his medical records. As was the case at the time of Judge Keyes's Order, Allen has not submitted any evidence that he submitted written discovery that would have required Defendants to provide him his medical records. *See* (Mar. Order at 3). Additionally, Allen has been advised about the appropriate method for him to obtain discovery in this case. *See* (*id.* at 2) (stating that Jacot "properly informed Allen that any pleadings or requests Allen makes regarding this lawsuit are to be sent to [Jacot] and not the prison staff directly"). To the extent Allen seeks redress for MCF-OPH employees' failure to follow their own procedures, that is not a claim raised in his Amended Complaint and thus cannot be addressed in this litigation. *See* (June Order at 14) (stating that Allen is not entitled to a TRO based on his inability to access his medical records because that relief is "unrelated to the claims made in his Amended Complaint."). Further, there is no evidence that Jacot, Reid, or any other defendant destroyed Allen's medical records, tampered with Allen's medical records, or that Reid's affidavit is false. *See* (*id.* at 14). To the extent Allen asserts he does not have access to his medical records and therefore, cannot adequately prosecute his case, that assertion is belied by the record. (Aff. of Margaret Jacot, "Jacot Aff.") [Doc. No. 90 ¶ 4] (averring that on June 1, 2016, Allen was served with a copy of his medical record as part of Reid and Larson's expert disclosures). Nonetheless,

---

[18]     (Mot. to Appoint Counsel at 3, 6–7, 8).

in abundance of caution, the Court orders Reid and Larson serve Allen with another copy of his medical records within fourteen days of this order, and to file a certificate of service on CM/ECF.

Allen makes some passing references to Rule 5.2(d) of the Federal Rules of Civil Procedure, which governs filing under seal.[19] To the extent Allen believes that Exhibit C was filed under seal in error, he did not object to Judge Keyes's order permitting Defendants to file his medical records under seal, and the time to do so has passed.[20] *See* (Order Dated Feb. 16, 2016); LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline. A party may not assign as error a defect in the order not timely objected to."). Additionally, Allen was served with his medical records, as stated above, and with Exhibit C. (Certificate of Service) [Doc. No. 46] (averring that Jacot mailed all documents related to Reid and Larson's opposition to Allen's TRO motion, including Exhibit C, to Allen); (Jacot Aff. ¶ 4). Nonetheless, if Allen, as the party whose information is protected, would like the medical records in this case to be unsealed, and

---

[19]   Rule 5.2(d) states "The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record."

[20]   Judge Keyes's Scheduling Order, issued the day after Judge Keyes's order regarding Exhibit C, provided the deadlines governing this litigation and granted Defendants permission to file Allen's medical records under seal in this case:

> Documents that discuss or disclose information about Plaintiff's medical care and treatment are classified as private data under the Minnesota Government Data Practices Act (Minn. Stat. § 13.85) and any Defendant seeking to use those documents in connection with any motion or other submission in the case may file those documents under seal. For purposes of this action only, and for documents containing Plaintiff's medical information or other private data concerning Plaintiff, it is not necessary for Defendants to obtain Court approval prior to filing such documents under seal.

(Scheduling Order) [Doc. No. 42 at 3]. Allen did not object to the Scheduling Order.

therefore filed publically, he may make the appropriate request with the Court. Unless and until the Court receives such a request from Allen, however, his medical records and related information will continue to be filed under seal.

### b.     Counsel's Access to Medical Records

Allen asserts that neither Jacot nor Dr. Craane's attorneys may have access to his medical records. Allen provides no legal or factual basis for the latter request. Allen's medical records are relevant to this case because Allen placed his medical care at issue in his Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."). Therefore, the Court cannot preclude the parties or their counsel from access to this information. Consistent with Judge Keyes's Scheduling Order, to the extent Allen's medical records are submitted to the Court in connection with a motion or other Court proceeding, they may be filed under seal without further motion practice. (Scheduling Order at 3). Filing documents under seal will prevent public access to the documents.

### c.     Jacot's Contact with Allen

The Court also denies Allen's request that Jacot not contact him. An attorney representing Reid and Larson is required to have at least some contact with Allen in connection with the discovery and management of this lawsuit. *See generally* (Jacot Aff.). The Court finds

that Jacot's contact with Allen has been appropriate and has not exceeded her duty in her capacity as Reid and Larson's counsel. *See* (*id.*). Reid and Larson's counsel must continue to serve Allen with documents as required by the Federal Rules of Civil Procedure. (*Id.* ¶ 4). In Reid and Larson's most recent motion, Jacot notes that meeting and conferring is not likely to be productive because Allen has asked Jacot not to contact him and has filed complaints against her for contacting him in course of her duty as Reid and Larson's attorney. *See*  (Defs. Reid & Larson's Meet & Confer Statement) [Doc. No. 150]. Notwithstanding the fact that Jacot no longer represents Reid and Larson, the Court agrees that meet-and-confer communications are unlikely to be productive and therefore excuses all parties from their meet and confer obligations until further order of the Court. *See* LR 7.1.

### d.      New Claims

To the extent Allen asserts new theories of relief in his motions, they are not properly before the Court. "[A] memorandum is not the appropriate place to attempt to amend a pleading to raise a new claim." *Nelson v. Bank of N.Y. Mellon*, No. 12-cv-1096 (SRN/SER), 2012 WL 4511165, at *4 n.2 (D. Minn. Oct. 1, 2012) (Nelson, J.); *see also* Fed. R. Civ. P. 15 (governing amended pleadings); LR 15.1 (same). Allen has not attempted to amend his complaint, and the time to do so has passed. (Scheduling Order at 1) (stating that "[a]ll motions seeking to amend or supplement the pleadings, including motions to add parties, claims, counterclaims, or defenses, must be served and filed by" March 15, 2016). Therefore, any relief sought based on new claims may not be addressed in Allen's pending motions, and the Court recommends denying any such relief based on new claims.

### e.      Bias

To the extent Allen argues Judge Keyes was biased against him, Allen offers no factual

or legal support for these allegations. Allen appears to take issue with Judge Keyes's statement that "Allen's troubles getting access to his medical records does not mean that Allen cannot fairly present his case." *See* (Mar. Order at 4). The Court understands Judge Keyes's statement to mean that Allen's difficulty in obtaining his medical records does not interfere with his ability to present his case to such a degree that appointment of counsel is required. *See* (*id.*). As Judge Keyes noted, Allen is required to use formal discovery procedures to obtain discovery in this case. *See* (*id.* at 2–3). As stated above, Allen's claims based on the MCF-OPH employees' failure to follow procedures is not a factual basis for relief raised in his Amended Complaint and therefore cannot be part of this litigation. To the extent Allen argues Judge Keyes was biased because an attorney offered to help Allen and Judge Keyes interfered with that representation, no factual support for this claim is offered. *See* (June Order at 19); *see also* (*id.* at 18) (stating that there is no evidence in the record that "an attorney from the Pro Se Project contacted the Court and volunteered to represent Allen"). Finally, if an attorney wishes to enter an appearance on Allen's behalf, he or she may do so using the proper procedures.

### B.    Motions for Continuance

Separate from the requests addressed above, Allen seeks a continuance to file a either a complaint or motion for declaratory judgment.[21] (First Mot. for Continuance at 4); (Mem. of Law in Supp. of First Mot. for Continuance) [Doc. No. 102 at 4, 5–6]; (Second Mot. for Continuance at 17); *see also* (Mem. in Supp. of Second Mot. for Continuance at 8).

---

[21]    At the same time that Allen filed his Second Motion for Continuance, he filed a list of questions; the intended respondent of these questions is unclear. *See* [Doc. No. 106]. A court cannot provide legal advice. To the extent Allen's questions were intended to be written discovery, those documents should not be filed with the Court. *See* Fed. R. Civ. P. 5(d) (stating that "disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission").

Both of Allen's Motions for Continuance reference "Rule 6.1." Local Rule 6.1 states the following:

> Ordinarily, a party who seeks a continuance must show good cause. But a party who seeks a continuance because of the absence of an expert witness must show extreme good cause. Parties must anticipate the possibility that an expert witness may be unavailable and must be prepared to present expert-witness testimony either by deposition or by stipulation among the parties that the expert witness's written report may be received in evidence.

LR 6.1(a).

Allen's Motions for Continuance are denied. As further explained below, declaratory judgment is a form of relief requested in a complaint or an entirely separate action; it is not granted as the result of a motion. Allen's Amended Complaint contained no such requested relief. Any motion seeking dispositive relief must be filed by the deadline for such a motion on December 1, 2016.[22] (Scheduling Order at 3). Further, the Scheduling Order does not provide any time line for filing a complaint seeking declaratory judgment in a new case, nor would the Scheduling Order dictate that, inasmuch as any such action would be an entirely new lawsuit.

### C.   Motion for Sanctions

Allen filed a memorandum of law in which he seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.[23] (Mot. for Sanctions). Allen argues Jacot filed his medical records "with corrupt motive [and] bad faith to taint the record medical relevance and materiality was removed and destroyed." (*Id.* at 2). Allen argues that Jacot's actions violate the Eighth Amendment and Rules 5.2, 26, and 37. (*Id.*).

---

[22]   The Court, however, as detailed below, extends the deadline to file dispositive motions to January 9, 2017.

[23]   Although Allen did not style this document as a motion, the Court treats it as a motion because there is no corresponding motion for which this memorandum provides support. Nonetheless, as stated below, further unsolicited memoranda will not be addressed in this manner. *See* LR 7.1(i).

Rule 11 states:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b). A court may issue an appropriate sanction if, after notice and an opportunity to respond, it finds that a party has violated Rule 11(b). Fed. R. Civ. P. 11(c)(1).

As discussed above, Allen's claims regarding Jacot's alleged misconduct are unfounded. He has provided no factual support or legal argument in support of his request that sanctions be imposed, and therefore, sanctions are not warranted.

### D.     Motion for Declaratory Judgment

Like many of his other motions, Allen's Motion for Declaratory Judgment argues Jacot violated Rule 26 through 37 of the Federal Rules of Civil Procedure. (Mot. for Declaratory J. at 3–4). Allen continues to argue that Judge Keyes's statement that his "troubles getting access to his medical records does not mean that Allen cannot fairly present his case." (*Id.* at 5). Allen disputes that only part of his medical records were relevant to his Motion for a Temporary Restraining Order. (*Id.* at 6). Additionally, Allen appears to be attempting to amend his complaint to add an equal protection claim. *See* (*id.* at 1–2). Allen's memoranda in support of

this motion mirror these arguments. (Mem. of Law in Supp. of Declaratory J. Rule 57) [Doc. No. 110]; (Mem. of Law in Supp. of Mot. for Declaratory J.) [Doc. No. 113]. Allen also asks for an order to search Jacot's home and car for what he believes are his missing medical records. (Mem. of Law in Supp. of Mot. for Declaratory J.) [Doc. No. 110 at 7].

Allen references Rule 57 of the Federal Rules of Civil Procedure, which states that the Rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."[24] Allen, however, does not seek declaratory judgment in his Amended Complaint, nor are the allegations raised in his Motion for Declaratory Judgment related to his Amended Complaint. *Cf. Daywitt v. Minnesota*, No. 14-cv-4526 (MJD/LIB), 2015 WL 4094199, at *14 (D. Minn. July 6, 2015) (Davis, J., adopting report and recommendation of Brisbois, Mag. J.) (stating that a claim for declaratory judgment in the amended complaint was not an independent cause of action and was instead "a request for a specific form of relief dependent" on other counts in the complaint). Instead, it appears Allen seeks declaratory judgment on new claims. Rule 57 contemplates a declaratory judgment action, not a motion for declaratory judgment. *See I.E.C. ex rel. J.R. v. Minneapolis Pub. Sch., SSD No. 1*, 970 F. Supp. 2d 917, 925 (D. Minn. 2013) (Davis, J., adopting report and recommendation of Brisbois, Mag. J.). Thus, the Court recommends denying Allen's Motion for Declaratory Judgment. The Court recommends, however, that the motion be denied without prejudice so that Allen may initiate a new declaratory judgment on these facts if he desires.[25]

---

[24]    Under certain conditions, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).
[25]

### E.      Motion to Appoint Counsel

In his Motion to Appoint Counsel, Allen argues he has an unspecified disability, with which Reid is interfering by denying him employment and educational and vocational programs. (Mot. to Appoint Counsel at 2). Allen seeks counsel to draft his motion for declaratory judgment because the law library does not have the appropriate legal materials. (*Id.* at 8); *see also* (Mem. of Law in Supp. of Mot. to Appoint Counsel at 1). Allen argues that "assistance of counsel is proper to ensure equal protection [and] to ensure redress." (Mot. to Appoint Counsel at 8). Finally, Allen argues that Jacot had ex parte communication with the Court, "and raises a complexity issue," which "makes it even harder to present facts when judgment has already ruled [sic]." (*Id.* at 9).

Once a *pro se* litigant is permitted to proceed *in forma pauperis*, as Allen has been here, 28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Litigants in civil cases, however, do not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, appointing counsel under § 1915(e) is committed to the discretion of the court. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). "A district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel." *Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996). The decision to appoint counsel involves weighing "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

This is Allen's fifth Motion to Appoint Counsel in this case. *See* [Doc. Nos. 28, 31, 53,

71]. All five of these previous motions have been denied for the reasons articulated in Judge

Keyes's February 16, 2016, Order:

> After reviewing [the] factors, the Court finds that neither the facts nor the legal issues involved in this [case] are so complex as to warrant appointment of counsel. Although Plaintiff's lack of legal knowledge may present some disadvantages, in terms of the requisite time and effort that may be attendant to the presentation of his claim, Plaintiff has the threshold ability to articulate his claims and to argue his positions, and he is able to communicate effectively with the Court. Plaintiff has made no showing that the side effects of his medication on his thought processes or memory affect this ability in any significant manner.

(Order on Pl.'s Mots. to Appoint Counsel at 2); *see also* (Mar. Order at 4) (denying that Allen's

third motion to appoint counsel "for the same reasons the Court denied Allen's previous two

motions" and adding that "the Court concludes that Allen's troubles getting access to his medical

records does not mean that Allen cannot fairly present his case" and "[n]or does the fact that

Allen has not yet prevailed on any of the motions he has filed mean that he lacks the ability to

articulate his claims and argues his positions"); (June Order at 17–19) (affirming Judge Keyes's

March Order and denying Allen's fourth motion to appoint counsel).

Here, Allen has offered no evidence that demonstrates that counsel should be appointed.

As stated in past orders, Allen is capably representing himself in this litigation by filing motions,

responses to motions, and otherwise generally advocating for himself. He has failed to present

any factual evidence that would allow the Court to conclude that counsel is necessary. Allen's

assertion that the law library's materials are insufficient is not persuasive in light of Allen's

ability to continue to file motions citing to case law. Allen's allegations regarding Jacot's

conduct are addressed above and do not warrant the appointment of counsel. Finally, to the

extent Allen argues it is even more difficult to present facts because judgment has already to be

entered, he is mistaken. Judgement has not been entered in this case.

Based on weighing the relevant factors as described in *Phillips*, the Court finds that the

16

appointment of counsel is not warranted.

### F.      Motions for Protective Order

Reid and Larson seek a protective order excusing them from responding to Allen's Requests for Admissions ("RFAs"). (Mem. in Supp. of Protective Order) [Doc. No. 121 at 1]. Specifically, Reid and Larson argue Allen's RFAs are outside the scope of discovery in this case, and instead, are intended to harass Reid, Larson, and Jacot regarding the filing of his medical records in response to his Motion for TRO and Preliminary Relief. (*Id.* at 4–5). Dr. Craane joins Reid and Larson's motion. (Dr. Craane's Motion for Protective Order). Allen opposes the motion, making many of same the factual allegations discussed above in section II.A.[26] *See* (Mem. of Law in Opp'n of Protective Order) [Doc. No. 132]; (Mem. of Law in Opp'n to Protective Order) [Doc. No. 137].

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The order may limit discovery in one or more of several ways, including "forbidding

---

[26]      The Court notes that Allen argues that Jacot sent him an unsigned and undated order granting the Motion for Protective Order, which he argues is "insufficient." (Mem. of Law in Opp'n to Protective Order) [Doc. No. 137 at 3–4, 6]; *see also* (Mem. of Law in Opp'n of Protective Order) [Doc. No. 132 at 4, 6]. The Court assumes that this was a proposed order, which the Local Rules require to be served and provided to the Court. LR 7.1(b)(1)(B); *see also* (Certificate of Service of Proposed Order) [Doc. No. 124] (Jacot's certification that she served the proposed order for Reid and Larson's Motion for a Protective order via email to the Court and Dr. Craane's counsel, and by U.S. mail to Allen).

the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). Courts have broad discretion to decide discovery motions. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993).

Most of Allen's RFAs seek admissions unrelated to any facts or legal theories alleged in the Amended Complaint. (Pl.'s RFAs) [Doc. No. 118]. Allen's Amended Complaint makes allegations regarding Defendants failure to provide a substitute for eggs in his diet and Defendants' failure to treat his back and finger injuries. Allen's RFAs, however, primarily seek information regarding the DOC's polices regarding medical records and information regarding documents filed in this case. *See* (*id.*). As a threshold matter, Allen's RFAs are not related to his claims as articulated in the Amended Complaint. They are therefore not relevant and do not require a response. The only exception is RFA 15, which states "Health services does not [sic] issue medical accommodations." (Pl.'s RFAs at 5). Assuming that Allen refers to his requested accommodation that he receive a substitute for eggs as identified in his Amended Complaint, this RFA could be construed as a request for Defendants to admit or deny that health services does not issue medical accommodations, which is relevant to his egg substitution claim. *See* Fed. R. Civ. P. 26(b)(1). Therefore, Defendants must respond to this RFA within fourteen days.

To the extent Allen seeks verification of documents already filed, the Federal Rules already provide for the type of verification Allen seeks through the operation of Rule 11. *See* Fed. R. Civ. P. 11(b)(3) (stating that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). In other words, the verification

Allen seeks is unnecessary because all litigants essentially provide this verification through their filings. *See id.* Thus, even if Allen's RFAs were related to his Amended Complaint, it would be unduly burdensome to order Reid, Larson, and Dr. Craane to respond to RFAs that are superfluous of the Federal Rules of Civil Procedure.

For the foregoing reasons, the Court grants in part and denies in part Reid, Larson, and Dr. Craane's Motions for Protective Order. Defendants must respond to RFA 15 within fourteen days, but are excused from responding to the remaining RFAs.

### G.      Motion to Strike

Reid and Larson move the Court to strike four of Allen's filings: his two pending Motions for Preliminary Injunction, his second memorandum opposing their Motion for Protective Order, and his Motion to/for Objection Rule 46.[27] (Mot. to Strike at 1). Reid and Larson argue these documents "are frivolous and are clearly designed to harass the parties and the Court." (*Id.*). Allen opposes the motion, making many of same the factual allegations discussed above in section II.A. (Resp. to Mot. to Strike) [Doc. No. 146].

A court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Pleadings include complaints, answers, third-party complaints, answers to third-party complaints, and replies to answers if ordered by the court. Fed. R. Civ. P. 7(a). Therefore, a motion to strike directed to a document other than a pleading is "not authorized by the Federal Rules of Civil Procedure or the local rules of this Court." *Zellner-Dion v. Wilmington Fin., Inc.*, No. 10-cv-2587 (PJS/JSM), 2012 WL 2952251, at *1 n.1 (D. Minn. July 19, 2012) (Schiltz, J.).

Reid and Larson do not identify any rule under which striking documents that are not

---

[27]      As stated above, the Court will not rule on Allen's motions under Rule 46. *See supra* n.2.

pleadings is appropriate. The Court therefore denies the Motion to Strike because it is not procedurally proper under Rule 12(f) and because Reid and Larson identify no other legal authority under which their motion should be granted. Nonetheless, the Court shares Reid and Larson's concerns that Allen's motions are repetitive, disrespectful, and require a substantial amount of resources from all Defendants as well as the Court. To that end, the Court enters a briefing schedule below to guide the parties as the dispositive deadline approaches.

### H.      Motions for Preliminary Injunction

Allen's Motions for Preliminary Injunction once again argue that he has been denied his medical records and attempt to raise claims not identified in his Amended Complaint. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). Because Allen's allegations in his Motions for Preliminary Injunction "are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit," the Court recommends that the Motions for Preliminary Injunction be denied. *See id.*

### I.      Motion to Compel

Dr. Craane seeks access to Allen's medical records. *See* (Mem. of Law in Supp. of Mot. to Compel) [Doc. No 148 at 1]. Dr. Craane mailed Allen a request for authorization of access to his medical records on June 7, 2016, but Allen did not return the authorization or otherwise provide consent. (*Id.* at 2). Allen did not file a response to the motion.[28]

---

[28]      Although the Court has, at times, prompted parties to respond to various motions, the parties have an independent duty to timely respond to motions. *See Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (stating pro se status does not entitle litigant to disregard Federal Rules of Civil Procedure or court's local rules). The Scheduling Order provided deadlines for all motions and responses to be filed. (Scheduling Order at 3). Dr.

Judge Keyes determined that Allen's medical records are considered "private" under the Minnesota Government Data Practices Act ("MGDPA"), and therefore may be filed under seal. (Scheduling Order at 3); *see also* Minn. Stat. § 13.85, subdiv. 2. "The relevant question is whether the requesting party is entitled to the information sought under the Federal Rules of Civil Procedure, not under the MGDPA." *Scheffler v. Molin*, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012) (Keyes, Mag. J.). Thus, information cannot be withheld "purely on grounds that it is protected under the MGDPA." *Id.*

Allen's medical information is directly at issue in this lawsuit, which is based on Allen's allegations that Defendants denied his request for substitution for eggs and that Defendants failed to treat his back and finger injuries. *See generally* (Am. Compl.). Thus, Dr. Craane must have access to Allen's medical records in order to defend himself against these claims. Therefore, Dr. Craane's Motion to Compel is granted. Judge Keyes's order that Defendants may file Allen's medical records under seal without further motion practice remains in place. *See* (Scheduling Order at 3).

### J.       Motion to Seal

Reid and Larson seek an order permitting them to file affidavits, exhibits, and memoranda related to Allen's medical care under seal in connection with their forthcoming motion for summary judgment. (Mot. to Seal). They contemplate publically filing a redacted version of their memorandum. *See* (*id.* at 1–2). They also seek permission to serve unredacted copies on Dr. Craane's counsel. (*Id.* at 2). Dr. Craane joins the motion. (Dr. Craane's Notice of Joinder and Joinder of Defs. Reid & Larson's Mot. to Seal) [Doc. No. 153].

---

Craane's Motion to Compel was filed on October 31, 2016, and therefore, Allen's time to respond has since passed. *See* (*id.*) (stating that "[r]esponses to nondispositive motions shall be served on the other party or their attorney, if they are represented by an attorney, and filed with the Court on or before 14 days following service of the original motion" (emphasis omitted)).

Allen did not file a response to the motion, but the motion to seal is presumptively in his interest and consistent with his desire to limit the dissemination of his medical information.[29] Therefore, consistent with Judge Keyes's order, the Motion to Seal is granted.

## III. BRIEFING SCHEDULE

In order to ensure the "just, speedy, and inexpensive determination" of this action, the Court amends the Scheduling Order as follows. *See* Fed. R. Civ. P. 1.

The deadline to serve and file dispositive motions is extended from December 1, 2016, to January 9, 2017. As stated in the Scheduling Order,

> [r]esponses to dispositive motions shall be filed with the Court and served on the opposing party or their attorney, if they are represented by an attorney, on or before **25 days** following service of the original motion. Replies to dispositive motions shall be served and filed **14 days** following service of the response to the dispositive motion.

(Scheduling Order at 3). The parties, not the Court, are responsible for ensuring their compliance with these deadlines. Because the nondispositive motion deadline of September 1, 2016, has passed, this schedule governs all remaining non-trial motions in this case. *See generally* (Scheduling Order). Therefore, no other motions may be filed until rulings on all dispositive motions filed consistent with this briefing schedule are issued. Finally, to the extent Allen files any motion that raises any of the issues addressed in this Report and Recommendation and Order, such a motion may be summarily denied with reference to this Report and Recommendation and Order.[30]

In the past, Allen filed several memoranda in support of a single motion. This is not procedurally proper, and the Court is not required to consider these unsolicited memoranda of

---

[29] *See supra* n.28.
[30] To that end, the Court denies Allen's Motion re: Harassment because it raises issues already addressed in this Report and Recommendation and Order.

law. *See* LR 7.1(i). Even as a pro se litigant, Allen is required to adhere to this Court's Local Rules as well as the Federal Rules of Civil Procedure. *See Bennett*, 295 F.3d at 808 (stating pro se status does not entitle a litigant to disregard Federal Rules of Civil Procedure or court's local rules); *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir.1988) (per curiam) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law."). Nonetheless, to the extent memoranda relate to the currently pending motions, the Court has reviewed and considered the unsolicited memoranda in making its decision. Allen is advised that, going forward, unsolicited memoranda will not be considered.

This case shall be ready for trial on April 10, 2017.

## IV.    CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff Paris Da'Jon Allen's ("Allen") Rule 57 Fed. R. Civ. P. Declaratory Judgment Motion [Doc. No. 109] be **DENIED without prejudice**; and

2.    Allen's Order to Show Cause for An Preliminary Injunction [Doc. No. 135] and Order to Show Cause for An Preliminary Injunction [Doc. No. 136] be **DENIED**.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

3.    Allen's Motion Continuance Rule 6.1 Fed. R. Civ. P. [Doc. No. 84] and Motion Continuance Rule 6.1 Fed. R. Civ. P. [Doc. No. 104] are **DENIED**;

4.    Allen's Memorandum of Law Sanction Rule 11(c)(1)(B) [Doc. No. 107] is **DENIED** to the extent it may be considered a motion for sanctions;

5.    Allen's Motion for 28 U.S.C. 1915(e)(1) Appointment of Counsel [Doc. No. 115]

is **DENIED**;

6.      Defendants Reid and Larson's Motion for a Protective Order [Doc. No. 120] and Dr. Craane's Joinder in Motion for a Protective Order [Doc. No. 125] are **GRANTED in part** and **DENIED in part** as described herein;

7.      Defendants Reid and Larson's Motion to Strike [Doc. No. 142] is **DENIED**;

8.      Dr. Craane's Motion to Compel Plaintiff's Medical Records [Doc. No. 147] is **GRANTED**;

9.      Defendants Reid and Larson's Motion to Seal [Doc. No. 149] is **GRANTED**;

10.    Allen's Harassing Motions Bad Motive [Doc. No. 158] is **DENIED**;

11.    Counsel for Reid and Larson must serve Allen with a copy of his medical records within fourteen (14) days of this Order, and must file a certificate of service on CM/ECF; and

12.    The Scheduling Order is modified as follows:

a.    The dispositive motion deadline is extended from December 1, 2016, to **January 9, 2017**;

b.    No other motions may be filed until rulings on all dispositive motions filed consistent with this briefing schedule are issued; and

c.    This case shall be ready for trial on **April 10, 2017**.

Dated: November 29, 2016

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

24

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.